Great Lakes Coca-Cola Bottling Company v. Commissioner.
Great Lakes Coca-Cola Bottling Co. v. Commissioner
Docket No. 100880.
United States Tax Court
1944 Tax Ct. Memo LEXIS 161; 3 T.C.M. (CCH) 788; T.C.M. (RIA) 44260; July 31, 1944
*161 John May, Esq., 1222 Canal Bank Bldg., New Orleans, La., for the petitioner. Homer J. Fisher, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency in income tax in the amount of $33,303.28 for the year 1937. In computing the petitioner's surtax on undistributed profits, the respondent did not allow a dividend paid credit or any other credit. The notice of deficiency was mailed October 31, 1939, which, of course, was before the enactment of the Revenue Act of 1942. When this proceeding was first submitted to this Court, the only question presented for decision was whether a dividends paid credit should be allowed under section 27 (f) of the Revenue Act of 1936. Under a Memorandum Findings of Fact and Opinion entered May 22, 1941, it was held that such credit was not allowable under section 27 (f), and decision was entered for the respondent. From our decision, appeal was taken by the petitioner to the United States Circuit Court of Appeals for the Seventh Circuit. The Circuit Court in Great Lakes Coca-Cola Bottling Co. v. Commissioner, 133 Fed. (2d) 953, reached the same conclusion *162 which had been reached by this Court, concluding "that the taxpayer has not shown that it is within the purview of § 27 (f)." The Circuit Court said that since the taxpayer was not entitled to the credit under section 27 (f), then "To that extent the decision of the Tax Court is correct and is affirmed." However, because of the enactment of section 501 of the Revenue Act of 1942, said statute being retroactive and having been enacted after the decision by this Court was entered on May 23, 1941, but before the Circuit Court rendered its decision on March 6, 1943, the Circuit Court remanded this proceeding to this Court "for the purpose of permitting that Court to determine whether or not petitioner is entitled to any relief under the Act as amended." Pursuant to the mandate, this proceeding was heard further on February 23, 1944. At the hearing, a stipulation of facts with attached exhibits was filed by the parties. The only question now presented is whether petitioner for 1937 is entitled to a credit as a deficit corporation under section 501 of the Revenue Act of 1942, amending section 26 (c) (3) of the Revenue Act of 1936. Petitioner filed its return for the taxable year with *163 the collector for the first district of Illinois. Findings of Fact Petitioner was incorporated on March 27, 1925, under the laws of the State of Delaware and was dissolved in December, 1937. The nature of petitioner's business and its objects and purposes were primarily the manufacture, bottling and sale of Coca-Cola. Its main office outside of Delaware was in Chicago, Illinois, and its operations were carried on in Michigan and Ohio. Upon incorporation, petitioner's capital stock consisted of two issues of cumulative preferred stock of the par value of $100.00 per share and 50,000 shares of common stock of no par value. As of January 1, 1936, petitioner had a deficit in accumulated earnings and profits for Federal income tax purposes in the amount of $71,586.90, and the accumulated dividends on its preferred issues of stock were in a substantial amount. On May 15, 1936, petitioner, by amendment to its certificate of incorporation, converted its 50,000 shares of outstanding no par common stock into a like number of shares of common stock of $1.00 par value and petitioner was further authorized by the amendment to issue an additional 100,000 shares of common stock of $1.00 par value. *164 On June 15, 1936, petitioner offered to its common stockholders pro rata and sold to them in its entirety 50,000 shares of the new common stock, receiving therefor $15 per share or a total of $750,000. Petitioner's board of directors, by appropriate resolution, determined that the respective amount sof capital and surplus resulting from such sale should be $1.00 and $14, respectively, per share, or a total of $50,000 capital and $700,000 surplus. The corporation intended to use the proceeds of the sale of such stock, or a portion thereof, to redeem its outstanding preferred stock and pay the accumulated dividends thereon. On July 1, 1936, petitioner redeemed its entire outstanding preferred stock issues at par, paying therefor, $419,710, and at the same time petitioner paid the accumulated dividends thereon of $276,811.02. Other than the foregoing, no distributions were made to stockholders upon any of petitioner's stock at any time prior to petitioner's reorganization on November 30, 1937. On November 30, 1937, petitioner, in pursuance of a plan of reorganization, transferred all of its assets, including its earnings for the period from January 1, 1937, to a group of new corporations, *165 organized in Michigan, Ohio and Nevada, in exchange for the stock of the new corporations and then distributed this stock in complete liquidation to its stockholders in exchange for their stock in petitioner and petitioner was then dissolved in December, 1937, remaining alive solely for the purpose of this proceeding. Petitioner's 1936 earnings and profits for Federal income tax purposes were $166,691.09 and its Federal income tax liability for that year was $22,949.57. Petitioner's earnings and profits for Federal income tax purposes for 1937 were $227,200.46 and its Federal income tax liability for that year amounted to $31,938.32 of normal tax and the undistributed profits surtax here in controversy. The total assets, liabilities, net assets, capital, and surplus of petitioner on December 31, 1935, June 30, 1936, and December 31, 1936, were as follows: 12/31/1935
6/30/1936
12/31/1936
Total Assets
$525,765.51
$1,362,992.43
$734,342.32
Liabilities
114,754.21
163,367.71
128,852.15
Net Assets
411,011.30
1,199,624.72
605,490.17
Capital Stock: Class A
246,840.00
246,840.00
Class B
172,870.00
172,870.00
Common No Par
49,973.40
Common $1.00 Par
100,000.00
100,000.00
Total Capital
469,683.40
519,710.00
100,000.00
Surplus[n*] (Deficit)
($58,672.10)
$679,914.72
$505,490.17
*166 [n*] The surplus as at 12/31/1935 and 6/30/1936 was composed of paid-in surplus and earned surplus as follows:
The foregoing surplus (deficit) is after eliminating accrued dividends on preferred stock which were charged on the books to earned surplus and totaled $276,811.02 on June 30, 1936; and also after eliminating organization expenses and insurance on life of officers, which amounts were charged to earned surplus on the books. 12/31/1935
6/30/1936
Paid-in Surplus
$ 12,914.80
$713,587.20
Earned Surplus
(Deficit)
(71,586.90)
(33,672.48)
Total as above
($58,672.10)
$679,914.72 On July 1, 1936, petitioner's books showed a debit to paid-in surplus account of $276,811.02, representing the cumulative dividends on preferred stock which were paid on July 1, 1936, with a resulting balance in paid-in surplus account in the amount of $436,776.18, and a balance in earned surplus account of $56,551.45, as of December 31, 1936. The above debit of $276,811.02 was reversed on June 30, 1937, by transferring that amount from the paid-in surplus account to the earned surplus account, leaving a balance in the paid-in surplus account in the amount of $713,587.20 and a deficit *167 in the earned surplus account of $31,024.25, as of November 30, 1937. The parties have stipulated that if the $276,811,02 of cumulative dividends paid by petitioner upon its preferred stock at the time of redemption of such stock in 1936, is considered for Federal income tax purposes to have been paid out of petitioner's earnings and profits of the entire taxable year 1936 to the extent of such profits, then petitioner's deficit in accumulated earnings and profits for Federal income tax purposes on January 1, 1937, was $71,586.90, but that if such cumulative dividends be considered for Federal income tax purposes to have been paid out of paid-in surplus, then petitioner had no deficit in accumulated earnings and profits for Federal income tax purposes on January 1, 1937. Petitioner's certificate of incorporation and the amendment thereto contained no restrictions on the payment of dividends. Petitioner's by-laws adopted in 1925 contained the following provision: "The directors may decare dividends from the surplus or net profits arising from the business of the corporation as and when they deem expedient." The by-laws could be amended by a majority of the board of directors, *168 as provided in paragraph Ninth of the certificate of incorporation and in Article VIII, section 1 of the by-laws. In the certificate of incorporation, petitioner reserved the right to amend, alter, change or repeal any provision contained therein. One owner held 88 per cent of petitioner's common stock during the year 1937, being the same owner of that stock on June 15, 1936. Petitioner's net profits for the fiscal year 1935 were $38,710.98 and for the period January 1, 1936, to June 30, 1936, were $37,914.42. Opinion The question now presented, under the remand of the Circuit Court, is whether or not petitioner is entitled for 1937 to a credit as a "deficit corporation", under section 501 (a) (2) of the Revenue Act of 1942, amending section 26 (c) (3) of the Revenue Act of 1936. as follows: (3) Deficit corporations. - In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision *169 was in effect prior to May 1, 1936. To obtain the benefit of the above provisions of the statute, the taxpayer corporation must show, first, that it had a deficit in accumulated earnings and profits as of the close of the preceding taxable year. Mercantile Bridge Co., 2 T.C. 166. See also, T.D. 5263, C.B. 1943, pp. 1003, 1005, amending article 26-2 of Regulations 94. Whether or not there was such deficit as is described in section 26 (c) (3) is a question of fact. It is the taxpayer's burden to prove the existence of the deficit under the statute. If the taxpayer proves that there was such deficit, it may then have to prove, second, that it was prohibited from paying dividends during the existence of the deficit in accumulated earnings and profits by a provision of a law or of an order of a public regulatory body. In this proceeding, under the remand, the parties submitted an agreed statement of certain facts, and such stipulation does not present facts to show how the alleged deficit arose, whether from operating losses, capital distributions in excess of earnings and profits, or other causes. The parties have stipulated, *170 merely, as follows: If the $276,811.02 paid as cumulative dividends at the time of redemption of petitioner's preferred stock in 1936, referred to hereinafter, is considered for Federal income tax purposes to have been paid out of the earnings and profits of the entire taxable year 1936 to the extent of such profits, the petitioner's deficit in accumulated earnings and profits for Federal income tax purposes on January 1, 1937, was $71,586.90. If said payment of cumulative dividends is considered for Federal income tax purposes to have been paid out of paid-in surplus, the petitioner had no deficit in accumulated earnings and profits for Federal income tax purposes on January 1, 1937. From such stipulation, taken with some other agreed facts, it is not possible to make a finding of fact that petitioner had a deficit at the end of the preceding taxable year in the amount of $71,586.90, as petitioner contends. In 1936, petitioner redeemed its preferred stock and paid accumulated dividends thereon in the amount of $276,811.02. That distribuion was the only distribution made to stockholders upon any of petitioner's stock at any time prior to the reorganization in 1937. The first question *171 which must be answered is whether the deficit in accumulated earnings and profits which is alleged to have existed at the close of the preceding taxable year was due to the above distribution to stockholders. If it was, then the deficit does not come within section 26 (c) (3). See T.D. 5263, where the following is stated: "A deficit in accumulated earnings and profits can arise only out of the operation of the business at a loss and can not be caused by distributions to shareholders in excess of the amount of accumulated earnings and profits." The parties have stipulated that petitioner realized net profits for the fiscal year 1935 in the amount of $38,710.98, and that the earnings and profits in 1936 for income tax purposes were $166,691.09. If there had been a deficit in accumulated earnings and profits growing out of operating the business at a loss in earlier years, such has not been shown in this proceeding. The parties state that there was a deficit of $71,586.90 at the end of 1935. It would appear that the profits for 1936 wiped out that deficit. It also appears that the deficit claimed to have existed at the end of 1936 was caused by the distributions in 1936 to the *172 stockholders. Under the cited regulation, such deficit does not come within section 26 (c) (3). One factor leads to some difficulty in understanding the facts as stipulated, namely, the reference to a fiscal year. The notice of deficiency states that the income tax liability is computed upon a calendar year ended December 31, 1937. If the taxpayer at some time changed its method of reporting income from a fiscal to a calendar year basis, such is not shown. It may not be material, however, in determining the question of whether there was a deficit in accumulated earnings and profits at the end of 1936. What is material is what the profits and losses from operations in 1936 and in prior years were, and such facts are not before us. See Mercantile Bridge Co., supra. The tax year is 1937. The profits for income tax purposes for 1937 were $227,200.46. We think there must be another question to be answered in determining whether the petitioner can obtain a deficit credit under section 26 (c) (3), namely, if there was a deficit under 26 (c) (3), how long was it in existence, and was petitioner prohibited from paying dividends in the taxable year 1937 because *173 of a deficit, if any, during 1937. Section 26 (c), in general, envisages a situation under which the taxpayer can or cannot distribute its earnings for the taxable year. We cannot answer this question from the record before us. Accordingly, it is held that petitioner has not proved that it had a deficit in accumulated earnings and profits as of the close of the preceding taxable year under section 26 (c) (3), as amended. Since petitioner has failed to establish the primary fact under section 26 (c) (3), it is not necessary to consider the second question, which is whether it was prohibited by a provision of a law from paying dividends during the existence of a deficit in accumulated earnings and profits. Under such circumstances, we ordinarily would not give consideration to that question. But, here, the parties, for some unknown reason, have taken the view that if the second question, under section 26 (c) (3) is answered one way or the other, then the first question under that section need not be answered. That is, respondent takes the view that, as a matter of Delaware law, petitioner was not so prohibited, so that inquiry into the first question is not adequately discussed in *174 his brief; and petitioner assumes that the stipulated facts are adequate to establish a presumption as to the required deficit, and then argues that it was prohibited from paying dividends. Thus, the briefs of the parties are devoted almost exclusively to argument relating to the provisions of the corporation law of Delaware. This proceeding was originally heard on November 4, 1940. A decision was entered on May 23, 1941. The case was appealed and was remanded to this Court under a mandate of the Circuit Court filed on June 26, 1943. There was a further hearing at New Orleans on February 23, 1944. All the briefs were not submitted until June 8, 1944. The parties have been afforded every opportunity for hearing and argument. The present consideration of this proceeding by this Court must be dispositive of the proceeding. The arguments of the parties regarding the corporation law of Delaware have been given consideration. Under all of the circumstances, therefore, we will set forth our view upon the second question. contrary to our custom of not discussing a question which is not reached under the applicable statute, as we believe is true here. In the following discussion, there is, *175 necessarily, reference to existing deficit in accumulated earnings and profits, but such reference does not mean that we deviate from what has been stated above. It must be concluded that petitioner was not under the prohibition of a state law. Respondent refers us to the following provisions of the Delaware statutes, which he contends did not prohibit petitioner from paying dividends during the existence of its deficit in accumulated earnings and profits: Revised Code of Delaware of 1935. Sec. 34. The directors of every corporation created under this Chapter, subject to any restrictions contained in its Certificate of Incorporation, shall have power to declare and pay dividends upon the shares of its capital stock, either (a) out of its net assets in excess of its capital * * *, or (b) in case there shall be no such excess, out of its net profits for the fiscal year then current and/or the preceding fiscal year. This statute was in effect during the taxable year. Since petitioner's certificate of incorporation did not contain any expressed restrictions upon the payment of dividends, such payment must be governed by the terms of the statute. It is apparent that under the *176 facts in this proceeding, petitioner was not prohibited from paying dividends, under either of the alternative provisions of the statute, assuming that there was a deficit in accumulated earnings. As shown in the findings of fact, petitioner's net assets as of December 31, 1936, were $605,490.17 and its capital was $100,000 leaving a surplus of $505,490.17 which was available for dividend payments. The fact that the net assets consisted in part of paid-in surplus is immaterial for under the Delaware statute, dividends may be distributed from paid-in surplus. Kehl on Corporate Dividends, page 70; 29 Columbia Law Review, 906, 909. Also, as shown in the findings of fact, petitioner had net earnings and profits for its fiscal years 1936 and 1937, in the respective amounts of $166,691.09 and $227,200.46 before Federal income and undistributed profits taxes. Petitioner argues, however, that under its by-law, it could only declare dividends from the surplus or net profits arising from its business. It contends that such by-laws were incorporated into its certificate of incorporation by implication of law and that there was thus a restriction in its certificate *177 of incorporation against the payment of dividends. This argument is not impressive and petitioner has been unable to cite any Delaware case in support of its contention. In any event, however, we think that to come within the provisions of section 34 of the Revised Code of Delaware of 1935, the restriction must expressly appear in the certificate of incorporation and not by implication of law. In the absence of Delaware authority to the contrary, we cannot enlarge by judicial construction a plain and unambiguous statute. Petitioner's principal contention, however, is that the applicable Delaware law governing the declaration and payment of dividends in the taxable year was not the statute in effect during the taxable year but was the statute in effect at the time of petitioner's incorporation in 1925. In our opinion, this argument is untenable in view of the fact that section 83 of the 1915 Code particularly reserved the right to the state to amend or repeal the General Corporation law, provided such amendment did not impair any remedy against the corporation or its officers for any liability previously incurred. Pursuant to this section the state did amend the statute with respect *178 to the manner in which a corporation might declare dividends, and petitioner has not shown that such amendment would impair any rights of creditors or stockholders. In the absence of such a showing, we think the statute which was in effect during the taxable year is controlling. However, even under the statute which was in effect at the time of petitioner's incorporation, it cannot be shown that there were any restrictions preventing petitioner from paying dividends. Petitioner argues that the statute as it then existed prohibited a corporation from paying dividends "except from the surplus or net profits arising from its business." In this it is mistaken. It is true that the quoted provision was part of section 35 of Chapter 65 of the Revised Code of Delaware of 1915 but the phrase "arising from its business" was stricken from the 1915 Code by section 14, Chapter 113 of the Laws of 1917. The statute in effect at the time of petitioner's incorporation allowed the payment of dividends from surplus or net profits. Although the Delaware courts have not ruled on the precise question as to whether, under the Delaware statute in effect in 1925, the term surplus includes paid-in surplus, *179 the weight of scholarly authority is that it does. See 29 Columbia Law Review 461 (1929); 11 American Bar Association Journal 377 (1925); 29 Columbia Law Review 906. The nearest approach by a Delaware court to the question was in Wittenberg et al. v. Federal Mining & Smelting Co., (1926) 15 Del. Ch. 147, 133 Atl. 48, where the court said: Whether "net profits" is synonymous with surplus I shall not pause to discuss. It may be argued that it is not, and if not, then two funds exist from either of which dividends could be made and the paid-in capital left undisturbed. In other words, it may be argued that surplus can be created from a source other than profits, as for instance from sale of stock at a premium. In that event, though there are not net profits or accumulated profits from which to make a dividend, yet another fund, viz., the surplus might be argued to exist to which resort may be had for a dividend. And so on this argument, the statute may be construed as referring to two distinct dividend funds the existence of both of which is not inconsistent with the statutory conception *180 that the paid-in capital must always be maintained. It is well established that provisions granting special tax exemptions are to be strictly construed. Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46; Deputy v. DuPont, 308 U.S. 488. In order for petitioner to be entitled to a credit under section 26 (c) (3) as amended, it must affirmatively show that it was prohibited from paying dividends by a provision of law. Even under petitioner's contention that we are governed by the Delaware statute in effect in 1925, it has not shown that that statute prevented a payment of dividends from paid-in surplus. The burden of proof in this respect is upon petitioner. It should also be noted that in 1936 petitioner distributed $276,811.02 as dividends on its preferred stock. At that time petitioner alleges that it did not have accumulated earnings and profits sufficient to pay the entire amount of the dividends paid on the preferred stock, so that it must be assumed that a substantial part of such distribution was paid out of paid-in surplus. Petitioner apparently considered it lawful to pay the dividends in 1936, either *181 under the law in effect at the time of its incorporation or under the law of Delaware as it stood in 1935. Petitioner makes another contention that a provision of its by-laws allowing the payment of dividends only from surplus or net profits arising from its business constitutes a written contract restricting the payment of dividends under section 26 (c) (1) of the Revenue Act of 1936. It relies upon Rex-Hanover Mills Co. v. United States, 53 Fed. Supp. 235; and Lehigh Structural Steel Co. v. Commissioner, 127 Fed. (2d) 67. We do not believe that petitioner may now raise an issue under section 26 (c) (1) under the remand from the Circuit Court. The only reason for the remand was the amendment of section 26 (c) (3) by section 501 of the 1942 Act. At the time this proceeding was first presented, petitioner was entitled to frame its pleadings so as to invoke the benefits of section 26 (c) (1). In the first report in this proceeding, entered on May 22, 1941, it is pointed out on pp. 2 and 3 of the report, that petitioner had made an amendment to its petition to raise an issue under section 26 (c) (1), under other grounds, *182 and that it had abandoned the issue on brief. Accordingly, upon appeal to the Circuit Court, no question was presented under section 26 (c) (1). Petitioner, now, under the further hearing pursuant to the court's mandate, goes beyond the scope of the mandate and endeavors to renew an abandoned issue upon different grounds. Such attempt by petitioner is, in our opinion, improper. Our consideration now of this resuscitated issue is unnecessary, but we point out the following: A by-law of this nature cannot be considered a written contract restricting the payment of dividends. See Senior Investment Corporation, 2 T.C. 124, for a discussion of the cases. The cases relied upon by petitioner are distinguishable in that they involved dividend restriction agreements which were endorsed on the taxpayers' stock certificates. It is apparent that such a restriction is inherently different from a by-law restriction which may be repealed, modified, or altered at the pleasure of a majority of petitioner's board of directors. Decision on the question of the applicability of section 501 of the Revenue Act of 1942 will be for the respondent.